# CHARLESTON.

## GAS CO. *v.* PARKERSBURG.

Submitted September 14, 1887.—Decided November 19, 1887.

1. MUNICIPAL CORPORATIONS—POWERS—EXCLUSIVE PRIVILEGES—ILLUMINATION.

   Neither the charter of the city of Parkersburg, nor the general statutes in relation to municipal corporations, in force in this State in 1864, conferred upon said city the power to delegate to a private corporation the exclusive privilege of using the streets and alleys of the city for laying gas-pipes, and furnishing the city and its inhabitants with gas for 30 years. (p. 440.)

2. MUNICIPAL CORPORATIONS.

   The grant by a city to a gas-company of the exclusive privilege of lighting the city with gas does not deprive the city of the power to contract with an electric light company for lighting the city with electric lights. (p. 442.)

*Van Winkle* and *Ambler* for appellants.

*J. A. Hutchinson*, *J. B. Jackson* and *C. T. Caldwell* for appellee.

SNYDER, JUDGE:

The City of Parkersburg, by an ordinance passed on December 2, 1864, ordained that the Parkersburg Gas Company " shall have the exclusive privilege of using the streets, alleys, and public grounds of said city for the purpose of laying down pipes for the conveyance of gas in and through said city, for the use of said city and its inhabitants, for the term of thirty years; " " that the said company shall have the sole and exclusive privilege of using the streets, alleys, and public grounds of said city for the purpose of lighting said city with gas for the full term and period of thirty years from the time said company shall commence the supply of gas; " that " the said company shall at all times furnish the necessary burners and other fixtures for the use of said inhabitants of said city, upon contracts between said in-

habitants, severally, and said company, and also for all public buildings of said city upon similar contracts." The ordinance also fixed the maximum price at which gas should be furnished, and the manner in which the pipes should be laid and the lamps furnished, and prescribed other details which need not be stated. In pursuance of said ordinance, the gas company constructed its plant at a cost of about $80,000.00; and supplied the city and its inhabitants with gas for lighting purposes from the early part of the year 1865 to the present time. After the said company had thus commenced to supply gas, the city made a contract with the Sunlight & Vapor Stove Company, by virtue of which the latter has continued to supply certain streets of said city with gasoline lights upon posts similar to those used by the gas-company. By an ordinance passed December 9, 1886, the said city authorized the Parkersburg Electric Light & Power Company, a corporation created and organized under the laws of this State, to construct an electric plant in the said city "for the purpose of furnishing electric light and power to the said city and its inhabitants, which shall be the best light obtainable for the purpose of lighting stores and dwellings, as well as the streets of said city; and to erect, construct, and maintain poles, posts, masts, and towers in and along the streets, alleys, and public ways of said city, and to attach to the same the requsite wires and appliances for conducting currents of electricity such as are required for producing electric light and power." The said ordinance provides that said poles, posts, etc., shall be so placed as not to interfere with the water-pipes or gas-pipes now or hereafter placed in the said city, and that the right thus granted shall be exclusive for three years, and, when accepted by said company, shall have the effect of a contract.

On March 15, 1887, the said gas-company commenced its suit in the Circuit Court of Wood county against the said Electric Light & Power Company, the said Sunlight & Vapor Stove Company, and the city of Parkersburg. The plaintiff in its bill, after setting out the above ordinances and facts, avers that the city of Parkersburg had notified it that after June 1, 1887, the said city will no longer pay the

plaintiff for lighting said city, because—so the plaintiff be-lieves—the said city has received and been considering a proposition from said Electric Light Company to light the streets, alleys, and public grounds of said city by means of a so-called "incandescent electric light," whereby said company shall have the privilege of said streets, alleys, etc., and that, if said proposition is agreed to, it will tend to les-sen the plaintiff's rights, impair the value of its property, and destroy its exclusive privilege aforesaid; that said Elec-tric Light Company is now engaged in putting up poles, wires, etc., in said city, in order to interfere with the plain-tiff's rights, and its privilege of furnishing lights to said city, which, if allowed to be accomplished, will be an infringe-ment of its said exclusive privilege; that the said city was duly authorized to pass said ordinance of December 2, 1864; that the same was accepted, and thereby became a valid contract between the plaintiff and the said city, which is protected by the Constitution of this State and of the United States. The plaintiff then prays that the said city, the said Electric Light Company, and the said Sunlight & Vapor Stove Company, may each severally be enjoined from making any contract whereby the said companies, or either of them, may be authorized in any manner to light the streets, alleys, and public grounds of said city; that the said Electric Light Com-pany be enjoined from putting up any poles, wires, etc., in the streets, alleys, or public grounds of said city for the pur-pose of lighting the same, or furnishing lights in said city; that the said Sunlight & Vapor Stove Company may be en-joined from lighting said city with gasoline, and that any contract heretofore made between it and said city be de-clared void, etc.; and that the plaintiff may have general relief.

The judge of said Circuit Court, in vacation, granted the plaintiff a preliminary injunction against the defendants, as prayed for in the bill, which was subsequently modified so as not to interfere with or restrain the said Sunlight & Va-por Stove Company from lighting their lamps already erected in said city. The defendants, the city of Parkers-burg and the Electric Light Company, filed their separate an-swers to the bill, to which the plaintiff replied generally;

and the said defendants moved to have said injunction wholly dissolved; and the said judge having fully considered said motions, by an order made in vacation on April 9, 1887, dissolved so much of said preliminary injunction as restrains the Electric Light Company from-putting up any wires, poles, or other fixtures for the purpose of furnishing light to the inhabitants of said city, and furnishing power to said city; and the said judge refused to dissolve said injunction in any other respect, but, as thus modified, continued the same in force until otherwise ordered. From this order both the city of Parkersburg and the Electric Light Company obtained separate appeals to this Court. The appellants insist —*First*, that the city of Parkersburg had no power to grant an exclusive right to the gas company for lighting said city; and, *second*, if the aforesaid ordinance of December 2, 1864, is a valid and binding contract, it only grants the plaintiff the exclusive right to light with gas, and does not prevent the city from using or contracting for the supply of electric or any other kind of light except gas light.

1. The city of Parkersburg, by its act of incorporation, is authorized to "contract and be contracted with, sue and be sued;" and it is also declared that it "generally shall have all the rights, franchises, capacities, and powers appertaining to like corporations in this Commonwealth." Section 1, ch. 200, Acts Va. 1860, p. 354. And, by the general statutes in force at the time, it is declared that such corporation "shall have power to lay off streets, walks, or alleys, alter or improve and light the same, and have them kept in good order." Section 25, ch. 54, Code Va. (Ed. 1860,) 317, (same, in effect, as section 28, ch. 47, of Code of this State). It is conceded that these statutes contain all the express authority possessed by the city of Parkersburg at the time it passed the aforesaid ordinance of December 2, 1864, in reference to the subject embraced in said ordinance.

The Court in its opinion in *Wright* v. *Nagle*, 101 U. S. 791, 796, says: "Exclusive rights to public franchises are not favored. If granted, they will be protected, but they will never be presumed. Every statute which takes from a Legislature its power will always be construed most strongly in favor of the State. These are elementary principles."

"Monopolies, and exclusive privileges in the nature of monopolies, are not favored by the common law, nor by the interests of society. A government is not to be presumed to design to relinquish or circumscribe its rightful power or control in promoting the advantage of the community, any further than it has plainly and clearly indicated, without the necessity of resorting to remote inferences and construction." 1 Minor Inst. 588; *Stourbridge* v. *Wheeley*, 22 E. C. L. 792. In *Bridge* v. *Bridge* it was directly determined by the Supreme Court of the United States that no franchise was exclusive unless so ascertained to be by the unmistakable terms of the grant. 11 Pet. 544; 7 Pick. 371; *Richmond, etc.*, v. *Bridge Co.*, 11 Leigh 521; 13 How. 71; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; Cooley Const. Lim. 394, 395; Ang. & A. Corp., § 111.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: *First*, those granted in express words; *second*, those necessarily and fairly implied in or incident to the powers expressly granted; *third*, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute. These principles are of transcendent importance, and lie at the foundation of the law of municipal corporations." 1 Dill. Mun. Corp., § 89, (55;) *Cook Co.* v. *McCrea*, 93 Ill. 236; *Somerville* v. *Dickerman*, 127 Mass. 272; *Carron* v. *Martin*, 26 N. J. Law 594; *Dore* v. *Milwaukee*, 42 Wis. 108; *Reis* v. *Graff*, 51 Cal. 86. This Court has in terms fully approved the doctrine above quoted from Dillon, and adopted and followed it in several cases; thus making it the settled rule in this State. *Christie* v. *Malden*, 23 W. Va. 667; *Charleston* v. *Reed*, 27 W. Va. 681.

We will now apply these principles to the case at bar. It is not pretended that either the charter or any statute, " in express words, " ever granted to the city of Parkersburg the power to confer upon any corporation or individual " the exclusive privilege of using the streets," etc., of said city for the purpose of laying down gas-pipes to light the city with gas; nor do we think such power can be " necessarily or fairly implied," or held incident to the powers expressly granted. The exercise of such power may be convenient, but that is not sufficient; it must be essential and indispensable to the powers expressly granted, or to the declared objects and purposes of the corporation. The only powers expressly granted, as we have seen, are the power " to contract and be contracted with ; " that the city " shall have power to lay off streets," etc., " and light the same ; " and " generally shall have all the rights, franchises, capacities and powers appertaining to like corporations in this Commonwealth." We are not referred to any statute or charter of any town or city in the Commonwealth of Virginia which confers authority upon such town or city to grant to any one the exclusive right to use its streets for the purpose of laying pipes, and lighting the same with gas or otherwise, and we presume there are none such. It is certainly not essential or necessarily incident to the power, expressly granted, " to lay off streets," etc., " and light the same," that the city should delegate to a private individual or corporation the exclusive right to furnish such light, and use the streets for that purpose. To justify such a construction, it must appear that in no other proper or reasonable manner could the city provide light for its streets and inhabitants. It not only does not so appear in this instance, but we know the fact is otherwise from public history. The city of Wheeling, in this State, furnishes her own lights for herself and her inhabitants, and so do many other cities and towns. It might not have been as economical or as convenient for Parkersburg, at the time it granted this right to the plaintiff here to light its own streets, and furnish gas to its inhabitants, as it was to have it done by the plaintiff; still, it was practicable for it to do so in the same way that other cities had done. The fair

inference from the language used by the Legislature in granting the power to the city to light its streets is that the city itself should own the plant and furnish the light. It would plainly be a manifest violation of the cardinal principles above stated to imply that the Legislature intended to confer upon the city the power to contract away to a private corporation the exclusive right to furnish such light, and thereby deprive itself of all power or control over the matter. My conclusion therefore is that the city acted beyond the scope of its powers in passing the ordinance of December 2, 1864, if, as claimed by the appellee, the gas company, in its bill, it thereby attempted to irrevocably confer upon the gas-company the exclusive right for 30 years to light the city, and use its streets for that purpose; and that its act was *ultra vires*, and is void, to the extent that it attempts to confer such exclusive right. *State* v. *Gas Co.*, 18 Ohio St. 262; *Gas-Light Co.* v. *Middletown*, 59 N. Y. 228.

2. But if there could be any controversy about the conclusion just announced, which I think there ought not to be, still the gas-company is not entitled to the relief it claims in its bill in this cause. We have already shown that the grant of an exclusive privilege will not be implied. It is equally well settled that such privilege, when legally granted, will not be extended beyond its obvious meaning. Thus, in *Parrott* v. *City of Lawrence*, 2 Dill. 332, it was held that the exclusive right to build a bridge at a given point would not prevent the establishment of a ferry near the same point. In *Bridge Prop'r* v. *Hoboken*, 1 Wall. 116, it was decided that an exclusive right to build a bridge at a certain point was not infringed by the establishment of a bridge for the passage of a railway alone. In *Emerson* v. *Com.*, 108 Pa. St. 111, the Court decided that the franchises of two charters—the one, the Fuel Gas Company, incorporated for the purpose of supplying " heat to the public from gas within the city of Pittsburgh; and the other, the Pennsylvania Fuel Company, incorporated for the purpose of supplying heat to the public within the city of Pittsburgh by means of natural gas, conveyed from such adjoining counties as may be convenient "—were not identical,

and therefore not necessarily hostile to each other, under the statute granting an exclusive privilege to the company first chartered. The effect of the decision in this case is that the grant of an, exclusive right to one company to supply the city of Pittsburgh with manufactured gas is not infringed by the grant of the right to another company to supply the city with natural gas.

In 1868 the city of Saginaw made a contract with the gas-light company giving it the exclusive right to light the street-lamps and supply the inhabitants with gas for 30 years. In 1886, the city council passed a resolution accepting a proposition from an electric light company for lighting the streets and business-houses. Upon a bill filed by the gas-company to restrain the city and electric light company from carrying out the contract with the latter, it was decided in *Gas Co.* v. *City of Saginaw*, 22 Reporter, 578, that said contract with the gas-company, so far as it attempts to give an exclusive right to supply gas for 30 years, was a monopoly, and could not be enforced, and that the plaintiff was not entitled to any relief. Brown, J., in the conclusion of his opinion in that case, says: " The plaintiff took nothing by its franchises but the privilege of lighting the streets with gas; and this it will continue to enjoy, so far as its patrons prefer the use of gas to electricity. But its claim to the exclusive privilege of lighting the city by all methods of illumination cannot be supported upon legal principles."

Without multiplying authorities or further discussion, I am of opinion, upon the decisions above referred to, and the reasons given in the opinions in those cases, that, even if it were conceded that the ordinance aforesaid passed by the council of the city of Parkersburg on December 2, 1864, had been a legitimate exercise of its power, the facts alleged by the appellee, the gas company, in its bill in this suit do not entitle it to the relief prayed. The orders of the judge of the Circuit Court must therefore be reversed; the injunction awarded the plaintiff wholly dissolved, as having been improvidently granted; and the cause remanded to the Circuit Court, with directions to that court to dismiss the plaintiff's bill, with costs.

REVERSED. REMANDED.