COUNTY COURT OF WEBSTER COUNTY, *et al. v.* J. PHILIP ROMAN, *Trading, etc., et al.*

(No. 8917)

Submitted May 23, 1939. Decided June 20, 1939.

*Wysong & Wysong,* for appellants.

*W. L. Wooddell* and *Hoover & Hoover,* for appellees.

HATCHER, JUDGE:

In this suit the circuit court invalidated an ordinance of the incorporated town of Addison (more familiarly known as Webster Springs, the name of its post office) providing for the installation of parking meters upon certain streets; and perpetually enjoined defendant Roman from enforcing a contract he had with the town for the installation and sale of the meters.

The ordinance specified that during certain hours (Sundays and observed legal holidays excepted), no vehicle (except trucks and commercial vehicles loading and unloading) should be parked in a parking position indicated by a meter, unless a five-cent coin be deposited in the meter. A violator of the condition was subject to fine.

Considerable evidence was admitted on the public estimate of such meters and on their conjectured effect upon the business of some town merchants. This evidence is not entitled to weight, since the policy of installing meters was solely for the town council's determination, unless it was exercised arbitrarily or fraudulently, and such exercise does not appear. The question is one of power, not policy.

Code, 8-4-10, confers upon a town council the power to regulate the use of the town streets; and, though the state road commission has certain statutory authority over town streets which are connecting parts of the designated primary road system, Code, 17-8-32, expressly reserves to an incorporated town the right "to regulate * * * the parking of vehicles upon any designated streets." Plaintiffs take the position that parking meters may not be installed unless "indispensably necessary" to regulate traffic, citing *Hyre* v. *Brown,* 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1230. There, the requirement that the exercise of certain municipal powers be indispensable, re-

lates to powers not granted to the municipality, but nevertheless essential to the accomplishment of municipal objects and purposes. That requirement has no application here, since the power to regulate parking is *granted in express words*. The law is long settled that when the right and the duty to do an act are imposed upon a governing body, it may lawfully select any means reasonably adapted to the end. *McCulloch* v. *Maryland*, 4 Wheat. 316, 409, 419, 4 L. Ed. 579. "The power to regulate the use of the streets is a delegation of the police power of the state government, and whatever reasonably tends to make regulation effective is a proper exercise of that power." *Buffalo* v. *Stevenson*, 207 N. Y. 258, 263, 100 N. E. 798, 800. There can be no serious denial that parking meters are a means of regulating parking.

Plaintiffs also contend that the ordinance and contract would set up an unlawful system of indirect taxation for revenue. The present arrangement goes little, if any, further than to provide payment for the meters and their service. The arrangement is analogous to the exaction of tolls for the maintenance of public highways and bridges. *Opinion of Justices* (Mass.), 8 N. E. (2d) 179, 182-3. The town has no funds of its own for this payment. It is not illegal for a municipality to charge a fee necessary to execute an express power. The power to regulate "justifies the charge of a fee and the imposition of a penalty; and the regulative measure is not invalidated because, incidentally, the city's receipts of money are increased." *Buffalo* v. *Stevenson, supra.* Accord: *Ex parte Harrison*, 135 Tex. Cr. R. 611, 122 S. W. (2d) 314, 317; *Ex parte Duncan*, 179 Okla. 355, 65 P. (2d) 1015, 1017.

Plaintiffs further contend that the arrangement would unlawfully encroach upon the property rights of abutters on the streets selected for meter installation. The fee of an abutter in a street is servient to the municipal easement for travel, which includes every reasonable means of transportation. *Fox* v. *Hinton*, 84 W. Va. 239, 99 S. E. 478; McQuillin, Munic. Corporations (2d Ed.), sec. 1496. A necessary incident to that easement is the right of the

municipality to regulate travel in the public interest. So long as a street is devoted to a reasonable public use, and the ingress and egress of a contiguous property owner are not disturbed, he has no just complaint against the use. The police power of a municipality, under legislative delegation to regulate parking, extends to every reasonable restriction on parking. This power has all the attributes of sovereignty, and is without limit, so long as exercised to accomplish regulation. "An ordinance regulating (the use of) a street is a legislative act entirely beyond the control of the judicial power of the state." *Milhau* v. *Sharp,* 17 Barb. (N. Y.) 435.

Plaintiffs protest that they have the right (a) to park vehicles alongside their property without paying the municipality a tax or fee, and (b) to enjoy their property without defacement by "super-imposed" parking meters. The Supreme Court of Alabama so held in the exceptional case of *Birmingham* v. *Realty Co.,* 233 Ala. 352, 172 So. 114, 123, 108 A. L. R. 1140. That, however, is not the law in this state. Here, an abutter has no right superior to the public in the use of the street, except his right of ingress and egress. With reference to the general use of the highways of West Virginia, this Court has declared "every individual has the same right". *Ralston* v. *Weston,* 46 W. Va. 544, 548, 33 S. E. 326, 328, 76 Am. St. Rep. 834. This is the general law, forcefully expressed by the Supreme Court of Illinois as follows: "In the use of a public street, the law recognizes no favorites. Subject to the law of the road, no one man or body of men has a superior right upon and in the street, as against the general public." *Chicago Co.* v. *Stanford,* 104 Ill. App. 99.

Cases elaborating the views expressed here are *Harper* v. *City of Wichita Falls* (Tex. Civ. App.), 105 S. W. (2d) 743; *Ex parte Harrison, supra; Ex parte Duncan, supra; Opinion of the Justices, supra;* and *State* v. *McCarthy,* 126 Fla. 433, 171 So. 314.

The judgment is reversed and the bill dismissed.

*Reversed; bill dismissed.*

Fox, PRESIDENT, dissenting:

I respectfully dissent from the ruling of the majority in this cause for the following reasons:

1. It will be conceded, I think, that the powers of a municipal corporation are strictly limited to those conferred upon it by the legislature, either by special charter or general law. This limitation has never been more clearly defined than in Dillon on Municipal Corporations (5th Ed.), Vol. 1, p. 448, section 237, wherein it is stated:

> "It is a general and undisputed proposition of law that a Municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

These principles are declared to be "of transcendent importance, and lie at the foundation of the law of municipal corporations." Dillon, *supra.* The language above quoted has been approved by this Court in *Parkersburg Gas Company* v. *Parkersburg,* 30 W. Va. 435, 4 S. E. 650, and *Hyre* v. *Brown,* 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1230. The asserted power to install parking meters rests upon the authority given municipal corporations "to regulate or forbid the parking of vehicles upon any designated streets * * *." Code, 17-8-32. The general powers granted municipal corporations (Code, 8-4-10) do not include the right to impose a charge upon the use of a public street, and I do not think the power to regulate was ever intended to be expanded in the manner suggested by the majority opinion. Certainly there is grave doubt upon the question, and our decisions hold that that doubt must be resolved against the municipality.

2. In *Carson* v. *Woodram,* 95 W. Va. 197, 120 S. E. 512, this Court upheld the right of the legislature to provide

for the issuance of special permits over public highways between fixed termini to a carrier of passengers for hire and, of course, this ruling applies to other types of commercial transportation and the statute on which that decision was based authorizes the certificates of convenience which have been issued to various transportation companies, giving to them special and preferential rights over highways. So far as I know, this is the only law which in any way infringes upon the right of citizens to use the highways of the state in the ordinary course of life and business without charge. It is true, of course, that streets and highways are used by street railways, electric, telegraph and telephone lines; however, street railways are but another method of transportation, and the other uses mentioned do not interfere with the right of travel. Conceding the right of a municipality to regulate traffic, I think it can only do so by ordinances which give to no one any preferential right such as is created when, by the payment of a fixed charge, a particular person acquires the right to occupy any part of a street to the exclusion of every other person. I am persuaded that the precedent established by allowing the streets of the city to be made revenue-producing, even in the guise of paying the costs of regulation, and thus departing from the purposes for which they were originally intended, is a dangerous one. I think it safer to follow the old-time rule of keeping streets and highways free for all who desire to travel thereon, subject only to such regulations of traffic as varying conditions may require.

3. An abutting property owner has, of course, no special rights in the street which passes his door; the rights of those who travel thereon are paramount; but he does have the right, in common with all others, to the free use thereof, a right which is undoubtedly infringed when anyone is permitted, for a money consideration, to monopolize the right to park a car for any particular length of time. For example, a merchant owning and occupying a building is entitled to reasonable access thereto, which access may, under a parking meter system, under

some conditions, be practically destroyed; whereas, under the general power of regulation, provision could always be made for reasonable ingress and egress. I think that the ordinance complained of materially burdens the owner of property abutting on streets where parking meters are permitted; detracts from the use and value of the property; and deprives the owner of property of rights for which no compensation is provided, and to that extent violates the constitutional provisions against the taking of property without due process of law, and the taking of property for a public purpose without just compensation. '

I have grave doubts of the power of the legislature to confer upon a municipal corporation power to impose a tax or toll upon the use of streets. It may be that under the police power of the state, such authority can be granted if the charges provided for are limited to the expense of traffic regulation; but I do not think the legislature has granted any such power, and in the absence of such grant, it seems to me clear that it does not exist. I would therefore affirm the decree of the trial court.

RILEY, JUDGE, concurring:

I concur in the result reached by the majority of the Court in this case. With deference, however, I think the majority opinion has stated the principles of law involved in too broad a manner. I have in mind that the validity of legislation which provides for the installation of parking meters within the limits of a town or city should be appraised with a consideration of the size of the municipality and the weight of the traffic on its streets. If a street is encumbered with very little traffic, it occurs to me the public interest will not be served by the installation of parking meters. In such case, an ordinance providing for such installation would be unconstitutional.